May it please the Court, Richard Kendall on behalf of the petitioner. Your Honors, the question in this case is whether a theft of privileged documents from a law office can be investigated without enabling the thief and the litigation adversary... Now once again, you have to remember what the case is here. You're on a mandamus petition. Standard of review. And it's not a question of something can be stolen or anything else. The question is whether or not you meet the heavy burden that we require under case law for getting rid of mandamus. Quite correct. That's what's at stake here. We know what the facts are. So let's get on it. We've got nine minutes left. So let's talk about the stuff of mandamus. We argue, Your Honor, that the court below committed legal error on the law by misinterpreting the law that governs privileged waiver in such situations. The cases that were cited by the magistrate and by my learned opponents are cases that involve only the voluntary disclosure by a target to an adverse party and the picking and choosing among opponents by the target. That's not what happened here. Let me ask you a question. It was probably better directed to your opponent, but there's a couple of things I'm really confused about in this case. And maybe you can address them. One of them is there was a subpoena here, right? Correct. I'm not quite sure I understand. I looked at the briefs and there was not much discussion. Isn't a subpoena a lawful order that has to be complied with? It is, Your Honor, and it provides all the same. It's not a lawful order, but it does provide some precedent for what the target parties and agreements and what they wanted to do, all of that. Why isn't that entirely beside the point? Well, I would like to argue, Your Honor, that it is. Unfortunately, there is some precedent in the target cases that do involve grand jury subpoenas that require me to point out the difference between this case and those cases that did involve subpoenas. Here's my argument on the subpoena. Which cases are those? The cases that are cited in the list. Give me a name, you know? That's how we identify cases, by name, possibly by citation. Yes, Your Honor. The – You know, I might as well tell you my second question because I'm also confused about this. Isn't an attorney-client privilege a privilege of a client that can only be waived by the client? Yes, Your Honor. What evidence is there here that the client here waived? There is no evidence that the client waived, Your Honor. I mean, everything done here was by the lawyer, right? Everything that was done here – A lawyer can't waive the privilege on behalf of the client. It's one of those things like pleading guilty that only the client can do. Quite correct, Your Honor. So why have you argued that there's no evidence of waiver because there's no client – there's no action by the client? Your Honor, I think it is pointed out that the client has never waived. He didn't? And for that matter, nor has the – Mr. Toborow. Who cares what Toborow did? Toborow's the lawyer. The lawyer can't waive the privilege for the client. You know, all this talk about what Toborow did, again, strikes me entirely beside the point. Your Honor – Where's the client's waiver? There is no client waiver, Your Honor. And beyond that – I don't believe you hit that so hard, right? That's why you sort of fall before I look. There's nothing here from the client. Quite right, Your Honor. I would further point out that as long as this case was before the grand jury, it was covered by the restrictions that govern disclosures to a grand jury under Rule 6e of the Federal Rules of Criminal Procedure. Those are equivalent to a protective order. In fact, they're stronger than a protective order. They are statutory. And as long as the case is in front of a grand jury, there could be no disclosure of these documents. In that sense, this is much like the Bitteker case, the en banc case that Your Honor authored, in which – The brilliant Bitteker opinion? Is that the one you're talking about? I don't remember it, actually. So, Your Honor, I think – That was the habeas case, right? That was the habeas case, in which Judge Byrne had issued a protective order, and the court pointed out that at the time the litigant disclosed the documents, the litigant was relying on the protections accorded by the protective order, and that shows a lack of intent to waive and the lack of a waiver. And the same is true in this case, where the disclosing party was relying on grand jury secrecy, which had the equivalent protections of a protective order, also on the agreement of the receiving United States attorney to abide by not only grand jury secrecy, but the – When the subpoena was issued, it said you didn't need to disclose privileged materials. You could withhold, redact, or log any material over which you wanted to remain privileged, and there was no response by you to redact, withhold, or log at all, was there? There wasn't, and the reason for that is that to do so would have deprived the government of the corpus delicti of the crime. So what? You're not out there trying to help the government. You're trying to do what your client suggests. If it's really privileged and you really don't want it disclosed, it seems to me that in those situations you make the government come after it. You just don't produce. And then come back to me and say, well, I can produce to one person, but I can't produce to another. The same could have been said in the Bideker case. One can always refuse to disclose privileged documents, but when there are protections that prevent disclosure to unauthorized parties, and the only way for, in this case, the Segal's interest in having the theft of their privileged documents to be investigated is to permit under those protections the grand jury to review the documents, then there was no other way. To assert privilege would have defeated the desire to have an investigation done. And so as a person, I can desire the government to do something and produce what I need to them without any problem, but don't come after it in any other way. Well, Your Honor, I think it's very different in the cases that involve targets. And the reason is that when a target of an investigation discloses a document, he's disclosing it to the adverse party. And the toothpaste is now out of the tube, and the adverse party has possession of the privileged information. In this case, a neutral fact finder is in possession of the information. This is much like the submission to a court of privileged information in order for the court to evaluate the privilege. Let me ask you another question. Are all of the escrow documents now accessible to the public? No, not the privileged ones. Just the Toberoff timeline, is that all that's accessible? That is the only one that is accessible as, well, no. From my review of the record, it seems to me that the Toberoff timeline is certainly accessible to the public, and I frankly question whether all the documents were also accessible. No, I didn't go try to find out. It's absolutely clear, Your Honor, and I don't think there's any dispute on this, that the privileged documents over which the parties are fighting today are not accessible to the public. Counsel, I have a question with respect to, assuming we apply the Bauman factors, why can't we wait until the end of the litigation? What's the origin? Because if you wait until the end of the litigation, then the privilege will effectively have been lost. But doesn't Mohawk Industries v. Carpenter make clear that an adequate remedy for ruling on attorney-client privilege or attorney-client problem is always available on appeal? I don't think so, Your Honor. I think in a situation like this in which, if we were to have a disclosure of these privileged documents, it would be difficult to know at the end of the day exactly what effect that has, but the privilege would not have been protected. Your Honor, I only have 30 seconds left, but if I could, I'd like to reserve for rebuttal. Okay. We'll hear from the other side. Good morning, Your Honors. Matt Flann on behalf of D.C. Comics. Chief Judge Kaczynski, I wanted to address head-on one of your factual questions. If you go to page 1038 of the record, that's Mr. Kim at the U.S. Attorney's Office, his letter to Mr. Kendall. It says, In the event that you provide these documents to the government voluntarily, and that's his word, this letter will serve to memorialize the following. First, Mr. Tobaroff has obtained all relevant permissions and consents needed, if any, that provided the empty documents and related information to the government. I see no way not to read that as a client waiver. They're saying to him, have you obtained all the relevant permissions and consents? No, see, that's the nature of things. A client can't plead guilty for a... A lawyer can't stand up in court and say, my client pleads guilty. There are certain things only a client can do, because a lawyer can't waive the privilege for the client. And the question here is, where is the client's action? The fact that the lawyer stands up and says, even explicitly, yes, I have a waiver for my client, I don't think that's enough. I'm not aware of any case where that's enough. You actually need to have the client waive the privilege. And the fact that the lawyer purports to waive the privilege or implicitly waives the privilege or explicitly waives the privilege or says that the client has waived the privilege, I'm not aware of any case where that says that's enough. Where... I would argue, Your Honor, under the Balin test and the Cheney test for governing risk, given this evidence, given the representation by Mr. Toberoff to the government in producing these documents, that he had obtained all necessary consents, it would not be appropriate to reverse that decision below. It doesn't matter what he's obtained. He has obtained consents. The question is, where are the consents in the record? And if... I don't know. I'm not just not aware of any cases that allow the lawyer to waive the privilege on behalf of... It is the client's privilege, right? It is. But if the client says, no, this privilege will not be waived, the lawyer can't stand up and say, well, you know, I'm going to do it anyway, right? Correct. Now, I think what happens here to Judge Smith's point, the subpoena says you may withhold or redact any documents you wish. Well, it doesn't actually say that. What it says is if they are to be withheld or redacted, you must make a list. It gives you the affirmative choice. And what Judge Becker said in the Westinghouse case, and I think this is right on point, in footnote 15 of that case, he said the following, a subpoena that allows the party to assert privilege, to, you know, move to quash it, that is not an act of compulsion. And in Westinghouse, what happened, in fact, was the government and Westinghouse reached a stipulated protective order approved by a court there that said, yes, this will not affect a broader waiver. And Judge Becker, in one of his typically learned opinions, said that's not compulsion, that's voluntary. And two key factual findings were made here by the district court judge that I think needs to be given heavy deference, if not just positive deference here. He first held that petitioners had voluntarily produced these documents. What they should have done, in his view, is asserted privilege. If the government truly needed these documents, and there's no showing here that the government truly needed these documents. Why is that? How do you prosecute a case like this without the underlying documents? You use the timeline document, which itself discloses privileged documents. To your question, Judge Smith, several of the documents have been now ordered, compelled, produced in the case below and are available to the public because they have not been, in fact, privileged. And many of the privileged claims have been overruled and rejected by the district court. Secondly, on the factual finding point. There's no reason to postpone any final activity. In other words, to deny the mandamus. Yes. I think there's three ways to go here, Your Honor. One is to make a summary denial based on Mohawk. The second is to, and I think, to me, there are two very good footnotes in Bideker. The first is yours, Chief Judge Jasinski. The second is from Judge O'Scanlan's concurrence with Judge Rawlinson, which put petitioners on notice. And this was very important in the Quest case. This was very important in the MIT case. It put them on notice. And I'm reading from footnote two of Judge O'Scanlan's opinion. It says, The mere fact that the disclosure to the opposing counsel is made in confidence, i.e., under protective order, should not alter the status of the waiver. And went through and cited the Westinghouse opinions and the like. The question here is whether it was reasonable to expect grand jury secrecy, to expect a confidentiality agreement would protect disclosures otherwise here. And in light of the case law, what Quest says is, and, you know, very capable counsel there, too, David Boies representing the company there. It said, when you're dealing with an area of the law where there might be some disagreement and there hadn't been a clear ruling yet, as was the case here, we're going to find waiver. We're not going to allow private parties to enter into these agreements with the government. But there's a difference between disclosing something to opposing counsel and disclosing something in response to an order, which a subpoena is. And I'm just not sure whether you are required to assert a claim of privilege in response to an order. You are. You're invited to. The subpoena invited them to assert claims of privilege. As Judge Becker, I think, rightly held in the Westinghouse opinion. Again, it's a very scholarly opinion. He said, subpoenas all the time. Yes, they are a court order. But you are invited to say in response to the subpoena, here are the documents I am producing. I am withholding the following 25 documents. I'm going to give you fair notice with a privilege log of what I'm withholding. And if you, the requesting party, think that I have acted in an untoward fashion, you may go out and get, you may move to compel the remainder of the production. No subpoena that I'm aware of under the federal civil rules or federal criminal rules requires any party to produce documents that are otherwise privileged. And here, clearly a choice is made. I wanted to address another point that's made throughout their reply brief and argument today, the notion that there's a distinction between target and victim cases. To me, one of the most instructive cases here is the McKesson case that was decided by the California Court of Appeal. And in the agreement that McKesson made with the government in that case, the government said, you are not the target of the investigation. And the reason for that was McKesson was saying, one of our subsidiaries acted in an untoward fashion. The HBO company beneath us, the subsidiary, they did all the bad stuff. We are here reporting their crimes to you, SEC. We want to give you our documents. And what the California Court of Appeals said there, as has every other court of appeal to really give this issue any attention, is that you cannot, through an agreement or otherwise, affect anything other than a full and broad waiver here. We do think, to your question, Judge O'Scanlon, now that the parties have briefed the issue, now that it's fully before this court, and I would look to a case like Inree Burlington as a good example. I'm sorry, it's the Burlington case that talks about the Bailman factors and the clear error test and the third factor being dispositive. One thing this court could do is articulate what the rules are here a little bit more clearly so that there is not litigation in this area, and so there might be an instance to write a little bit more broadly. But one could go either way. There could be a summary denial or a more broad opinion. Let me get back to the first issue we're discussing.  The lawyer doesn't have an interest that is different from the client. But in this case, it seemed to me that Tuberoff is the one who wanted to have the prosecution go forward because he was angry at what he thought was the guy who was his associate who released the documents. But that's not the interest of the client. The client has interest in the confidentiality of the documents and not a particular stake in whether or not this particular suspected releaser gets punished. Again, I'm just wondering why it is enough in those circumstances for the lawyer to provide the documents without some sort of indication or some sort of actual proof that the client consented. Well, I think what's interesting, Your Honor, is that this has come up in almost all of the cases. And why is that? Because companies are targets of these prosecutions, or in the case of McKesson, they say we're reporting bad deeds by these other people. And oftentimes what they're doing is they're waiving both on behalf of themselves as a corporation, but also on behalf of the executives who work at the company. And there's a broader waiver affected when these documents are turned over. I also think Mr. Kim, if you read his book. But that is different. The corporation waiving on behalf of its principals or its directors and officers is different from a lawyer waiving on behalf of the client. The attorney-client privilege is the privilege of communication between the lawyer and the client. It's like spousal privilege. One spouse can prevent the other spouse from speaking in violation of spousal privilege, even though the other spouse wants to testify. In the same way the client can keep the lawyer from talking, even though the lawyer has his own reasons for wanting to disclose information. I think that's both true and not true. But I think the most important, and I'll explain. I understand in which case it's true, in which sense is it not true. It's not true in the following sense, Your Honor. In a lot of these corporate investigations, there are these investigatory teams that are going in and interviewing people. And the subject of the waiver is some of these memorandum. And in these cases, oftentimes, what is the case is there is a lot of ambiguity about who is having that conversation. Is that a conversation that's being had between the company's counsel and the private individual? Is that a conversation that's happening between the chairman of the board and his personal capacity? There's a lot of ambiguity there. And despite that ambiguity, the courts have universally held that there's a broader waiver. More practically, in looking at the record in this case, Your Honor, I think that's exactly why Mr. Kim in his letter was very careful. It's the first point he makes. He says, I want to be very clear, this is a voluntary production. That's his word, even though he's attaching a subpoena or a subpoena is coming out a couple days before. Mr. Klein, not this Mr. Klein, but another Mr. Klein, sends out the subpoena. Mr. Kim sends a letter a few days later. Your production is voluntary. He confirms that you wish to produce these documents. And the first thing he asks them to confirm, and Mr. Kendall doesn't dispute it in his letter seven days later, you have obtained all of the relevant consents. Now, did Mr. Kim require them to have an affidavit under oath, to have a plea colloquy in the same way you would in a criminal case? No, but I don't think there's any scintilla of evidence here that the client consents were not obtained. Otherwise, I doubt that Mr. Kendall was misrepresenting that. I doubt that Mr. Toberoff was misrepresenting that he had obtained those consents. There's not a scintilla of evidence, Your Honor, that the clients had not given those consents. And to the exact contrary, Mr. Kim was very careful and said, Please confirm for me. This memorializes our understanding. You have obtained their consents. And Mr. Kendall didn't come back and say, No, no, no, no, no. The reason I'm here is I'm representing Toberoff individually. Toberoff represents the Siegel separately, and I only consent as to him. We don't consent as to the heirs, and it's their attorney-client privilege. There's no record of it. Well, all these are fair inferences if the lawyer can't do that. I'm just wondering whether authority is that the lawyer can do that, can represent that the client waived without an actual statement from the client. I'm unaware. I'm sorry to interrupt you, Your Honor. I'm unaware of any one of the cases that even though you had the lawyers negotiating these agreements with the DOJ, any one of these cases that said, We're also going to require that the client themselves can submit some type of affidavit, that the client themselves submit some sort of proof here. I'm unaware of any one of the cases saying, We're going to add that extra hurdle, that extra bar to fine waiver. Every one of these cases, I mean, Well, I understand, but you're also not aware of any case that says, that discusses the issue and says it's enough for the lawyer to say it. You don't need a statement from the client. I'm not sitting here before you, Your Honor. I'd love to go back and read all the cases again, but I'm just not aware of any of them. I know. Believe me, it's been enjoyable to read them again. Any time I get to read a Judge Becker opinion, I'm a happy man. I think that that's not a fair inference. Judge Becker doesn't talk about it in his opinion. No, he doesn't. But what he talks about very clearly is that the company and the DOJ had gone into a district court judge and got it a protective order, and he said, That's not enough. And the company said, Well, hold on. We're under the compulsion of a subpoena. And they said, That's not enough. He said, That's not enough. And, you know, I'm not aware. I mean, it's a long opinion. We all know how he loves to write footnotes. There's no footnote in there saying, you know, And, by the way, in future cases, I'm going to require that the client himself, you know, stand up and swear an oath that he, too, has agreed to the consent. But there's no footnote saying it's enough if the lawyer says it. That is correct, Your Honor. But there's not any factual evidence in this record to draw any contrary inference to the one Judge Zaresky drew here, which was that if you read his factual conclusions, and I think those are dispositive, and I don't want to get you the wrong page of the record, but in his opinion, he said, You made a choice. This was voluntary. And he doesn't distinguish between Toberoff and the other defendants in the case. And I don't think that one can upset that factual finding under Cheney. Do you think that's a factual finding about what the client did? I do. I think because the motion was filed against. I'm sorry. What exactly is the finding? He makes a finding over two pages of his opinion. I'll point you to the pages. I'll point you to the pages. I do, Your Honor. It's pages 1482 to 1483 of the record. Why don't you talk about the lines? Absolutely. Where is it? He starts off with a discussion of your Bitteker case. Maybe not the unbanked version of it, but the Bitteker case on page... You don't have to give me a guided tour. Just tell me where the finding is. I don't need a narrative. Just give me a page and a line. I'm sorry. I would look at page 1482 of the record, starting at line 11, and I would read through the next page to line 2. You have to read all that to find it? Where's the finding that the client waived? Your Honor, I'm not saying that he made an express finding. Implicitly. Just tell me where it is that we find it here. Implicitly, explicitly. How close does he come? I'd be happy to. I'm sorry, Your Honor. The pressure of your questioning is throwing me off a tiny bit. Just give me one second. I promise I'll... I'll say nothing. Thank you so much. You just read and find it. Okay. He says in line 15, express waivers. Is that it? It's two parts to it. There's actually a syllogism here that I want to walk you through, if that's okay. Sure. He says express waivers result from voluntary actions. Line 15. Page 1482, Your Honor. The sentence there says the Ninth Circuit has analyzed. That's 14. Essentially. That's 14. Essentially is 15. So you're looking at the sentence that starts essentially? Yes, Your Honor. Okay. You started reading the middle of the sentence. I apologize. I was just looking for the beginning. Start. That's fine. Essentially, express waiver results from voluntary actions by the attorney or client. So that's the legal problem. He is wrong on that. It is not or client. It has to be the client. The lawyer himself cannot waive. Isn't he simply wrong when he says attorney or client? Attorney or client means either the attorney alone or the client alone. I don't think that's fair, Your Honor. I think that attorneys all the time act as agents for their clients. I'm asking you a question. If he had just said attorney and just struck client, he would be wrong on that. I disagree because I think attorneys act for agents for clients all the time and are able to make representations for those clients. Attorneys sign settlement agreements for clients all the time. Attorneys sign protective orders on behalf of their clients. It happens all the time. Attorneys act as agents and representatives. I'm standing here not in my own capacity as an attorney. I'm standing here representing my client, and I'm telling you what their positions are. And in the course of litigation, I'm asked all the time, do you concede this point? Yes, I do. Does DC Comics stipulate to this fact? Yes, it does. Well, there's lots of stuff that lawyers can do without obtaining their client's consent. Correct. Lots of stuff. Okay. Waiving attorney-client privilege is not one of them. If the lawyer can do it at all without an actual statement from the client, it's something that he has to act on behalf of the client. I agree with you. It has to be the client's waiver, not the lawyer's waiver. I agree with you. So as far as this suggests that the attorney can do it on his own, it's wrong. I don't think it suggests that he can do it on his own. I think it assumes, as did Mr. Kim, and the district court had Mr. Kim's letter in front of him. It was one of the most crucial pieces of evidence here. He can make the assumption, as I think any reasonable person could, when Mr. Kim says, you have represented me, you have came to consent. So if we read this, we should read this, express for yourself an authoritarian action of the attorney on behalf of the client. Correct. Or the client himself. Correct. That's really what. Correct. If an attorney. . . Go ahead. And where does he find that? He finds in the next paragraph. I'm sorry, are you done with that sentence? I am, Your Honor. Okay. He contrasts that with limited waiver in that paragraph. Okay. Keep going. Then where does he actually find. . . I want to start at line 23, if that's okay. Sure. The closest that defendants come to fitting within this fact pattern, he's talking about involuntary waivers or limited waivers, is that they responded to a grand jury subpoena. While a grand jury subpoena is, in fact, in order, nevertheless it did not and could not compel the production of properly privileged material. Defendants could have responded to the subpoena by standing on the privilege. The government then would have the choice of whether to move to compel, and if it had successfully moved to compel, the defendants would have a stronger argument that they had not expressly waived the privilege. Now, he equates express with voluntary. That's why I started with that sentence where I read in the middle of it, and I apologize for starting in the middle of the sentence. But what he's saying here is you made a voluntary waiver. The subpoenas, yes, they are to come with the force of the court order. So did all sorts of discovery responses. But you are permitted to stand on your objections as they were here, as they were invited to here by the subpoena. And Mr. Kim, remember, they get the subpoena. So just to understand, the lines you've read, what you would like us to read them as being, and it's maybe probably a fair reading. I just want to understand. Can I get some water as you ask? Is that okay? Sure, if you can listen while I'm getting water. But what you want us to read that as being a finding, an implicit finding, finding that the things that the lawyer did here were with the express consent of the client. I absolutely do, Your Honor. And I think when Mr. Kim asked Mr. Kendall, who is a former AOSA himself and one of the finest lawyers in town, when he asks him, the first condition of this agreement that we're entering into is, one, that you're voluntarily producing these documents. And, two, all proper consents have been obtained. I think it's impossible to reach any contrary finding. Now, if it's later revealed that the clients themselves, and no evidence of this has emerged, that they find some other lawyer and they say, no, no, no, no, Toberoff never disclosed it to us. He never got our consents. Well, then that's going to have to be hashed out in some action against him. But here, all the evidence is that they obtained those consents. And Mr. Kim, it's the first condition of this agreement that he's talking about. He says, represent to me that you got all the appropriate consents and assess. And he doesn't say it to Mr. Kendall. He says, tell me that Toberoff got them. And the only people that he would have to, I mean, the only people he could possibly get. I understand the chain of logic. But these are the lines that you say are the finding that we need to defer to. I mean, it's one of those things. I absolutely think those are the lines. Okay. Your way or your time. Thank you. Thank you for indulging me, Your Honor. Your Honor, the appropriate time for us to have sought a protective order would have been in the event the grand jury returned an indictment. It was premature to do it while we were under grand jury secrecy. There was no need to do it at that time. The grand jury secrecy was a complete protection. Secondly, on the Mohawk point, there is a post-Mohawk decision in this circuit, the Perry case. Why is grand jury secrecy enough? I'm sorry. I mean, why do you claim that grand jury secrecy is enough? In the same way that Judge Byrne's order in the Bitteker case protected against disclosure of the documents in any other proceeding, not only does the grand jury secrecy rule do that, it also protects against any disclosure to any persons other than the grand jurors, government agents. Well, but it is a disclosure to the grand jury. The grand jury is not a party to the privilege. It is a third party. So if you turn them over without a resolution of the privilege point, why haven't you waived it? I mean, these are people who are not parties to the – so sure, they won't tell anybody else, but you are, in fact, disclosing it to third parties. Correct. And I think that argument proves too much, however, Your Honor, and the reason is when you disclose to the district court in the Bitteker case and to the jurors and, in fact, an open court in that case, or you disclose to a court for in-camera review, you're also disclosing to third parties, and ultimately – No, the difference is at that point you've asserted the privilege and you turn it over subject to an assertion of a privilege. Well, but let's go – In this case, you have not. I'm assuming there was a compulsion to turn it over. You know, you don't turn it over and say, well, we assert the privilege. You don't want us to look at it. Your Honor, the letters are replete with our assertions of the privilege. I did everything I could short of refusing to disclose the corpus delicti of the crime. I asserted the privilege every which way before the grand jury in the form of seeking grand jury secrecy from the government. My letters over and over assert the privilege and seek confidentiality and assert the common interest privilege as well. So you cannot possibly say that we did not assert the privilege, plus this entire crime was the theft of privilege documents. This whole thing was about – You did not comply with the procedures that the subpoena provides for asserting the privilege, which is to make an index and actually withhold it. That's true, Your Honor, but why did we not do that? If we had done that, we would not have been able to provide the documents. Well, let me ask you a prior question. Why do I care why you haven't done it? The reason you care – The point is you didn't do it. The reason you care, Your Honor, is that it would be a perversion of policy to say that when the object of the crime is the theft of privilege documents to turn them over to the litigation adversary, that the only way the crime can be investigated is to let the criminal and the recipient of the property achieve their objectives. That is – I have no idea what you just said. Why is – what is making an index and claiming of privilege, saying, look, this is the index of the documents and these are the ones that are privileged, how does that defeat the – Because the purpose of a privilege log is that you don't give the documents that are logged. There was no need to individually log the documents because they had already been asserted in toto to the U.S. attorney as privileged documents. There was no question between us and the United States attorney and the grand jury as to whether the documents were privileged. There were two letters to that effect. Okay. Thank you. The case is argued. We'll stand submitted. Next, the argument in Pujo v. Ayers.
judges: Kozinski, O'scannlain, Smith